Michael L. SMITH, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 52A04–0909–CR–504.

Court of Appeals of Indiana.

June 30, 2010.

under this section constitutes a separate violation.

Patricia Caress McMath, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Karl M. Scharnberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

MAY, Judge.

Michael L. Smith pled guilty to auto theft, institutional criminal mischief, and arson.[1] He received a seven-year sentence, with three years suspended to probation. Smith raises three issues on appeal, which we restate as:

1. Whether the trial court should have considered certain mitigating circumstances Smith offered;

---

1. Ind.Code §§ 35–43–4–2.5 (auto theft); 35–43–1–2 (institutional criminal mischief); 35– 43–1–1 (arson).

2. Whether the sentence was inappropriate in light of Smith's character and the nature of the offense; and

3. Whether the trial court may require as a condition of probation that a probationer undergo polygraph examinations, with the condition that positive results amount to a probation violation and would be admissible in subsequent court proceedings.

We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

Smith stole three cars and set fire to two. On March 5, 2009, Smith and his accomplice used the third stolen vehicle to destroy property at a public swimming pool and a golf course. When Smith was apprehended on the golf course, he admitted stealing and setting fire to vehicles both that day and in January 2009.

Smith was in special education classes in high school until he began home schooling in the ninth grade. He has not completed high school. He has Marfan's Syndrome [2] and receives social security disability benefits.

Smith's plea agreement capped his executed sentence at four years and required the State to dismiss three other counts. The court sentenced Smith to four years for institutional criminal mischief, one and a half years for each count of auto theft, and one and a half years for arson. The court ordered some of the sentences be served concurrently, leaving a final sentence of four years incarceration and three years probation.

## DISCUSSION AND DECISION

### 1. *Mitigating Factors*

██ "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind.2008). A trial court may impose any sentence "within the allowable range for a given crime without a requirement to identify specific aggravating or mitigating circumstances." *Id.* "The trial court must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence." *Id.* at 1223. We review the reasons given, and the omission of reasons arguably supported by the record, for abuse of discretion. *Id.* "The relative weight or value assignable to reasons properly found or those which should have been found is not subject to review for abuse." *Id.* A sentencing court abuses its discretion only if its decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind.2007), *clarified on reh'g on other grounds* 875 N.E.2d 218 (Ind.2007).

██ The trial court did not abuse its discretion in determining the length of Smith's sentences. The court considered as aggravating factors Smith's juvenile adjudication of theft, and his subsequent violation of the probation imposed therefor. As a mitigating factor, it considered Smith's plea agreement. The court determined the aggravating and mitigating factors negated each other.

---

2. Marfan Syndrome is "a genetic disorder of the connective tissue that can affect the skeleton, eyes, heart and blood vessels." *What is Marfan syndrome?*, National Marfan Foundation 2010, http://www.marfan.org/marfan/2409/FAQ# what is MFS (last visited May 21, 2010).

 Smith argues the trial court overlooked three mitigating factors: 1) his acceptance of responsibility and cooperation with the police; 2) his diminished mental capacity; and 3) his inability to pay restitution to the victims while incarcerated. The trial court abuses its discretion in sentencing if it overlooks "substantial" mitigating factors that are "clearly supported by the record." *Anglemyer*, 868 N.E.2d at 491. The trial court may decide what circumstances it finds mitigating. "When a defendant offers evidence of mitigators, the trial court has the discretion to determine whether the factors are mitigating, and it is not required to explain why it does not find the proffered factors to be mitigating." *Johnson v. State*, 855 N.E.2d 1014, 1016 (Ind.Ct.App.2006), *trans. denied*.

 As the trial court found Smith's guilty plea to be a mitigating factor, we cannot say it erroneously overlooked his acceptance of responsibility. *See, e.g., Sensback v. State*, 720 N.E.2d 1160, 1165 (Ind.1999) (indicating a guilty plea has mitigating effect when it demonstrates defendant's acceptance of responsibility). We decline to hold the court was obliged to consider Smith's cooperation with the police as a mitigator, as Smith was cooperative with police only after he was apprehended. *See Glass v. State*, 801 N.E.2d 204, 209 (Ind.Ct.App.2004) (cooperation not entitled to mitigating weight when decision to cooperate came after arrest, and thus was a pragmatic decision).

 Neither did the trial court abuse its discretion in declining to find Smith's diminished mental capacity was a mitigating factor. The mitigating weight

to be afforded a defendant's mental impairment depends on: 1) the extent of the defendant's inability to control his or her behavior due to the impairment; 2) overall limitations on functioning; 3) the duration of the mental illness; and 4) the extent of any nexus between the impairment and the commission of the crime. *Williams v. State*, 840 N.E.2d 433, 439 (Ind.Ct.App. 2006). Smith has not established the effect his diminished mental capacity had on his ability to control his behavior, the extent to which it limited his ability to function, or whether there was a nexus between his mental condition and the crime. We therefore cannot say the trial court abused its discretion in declining to find Smith's mental capacity a mitigating circumstance.

 Finally, the trial court was not obliged to find Smith's inability to pay restitution from jail a mitigating factor. Mitigating circumstances can be found in any aspect of a defendant's character or record, or any circumstances of the offense, that the defendant proffers as a basis for a reduced sentence. *Wisehart v. State*, 693 N.E.2d 23, 64–65 (Ind.1998), *reh'g denied, cert. denied* 526 U.S. 1040, 119 S.Ct. 1338, 143 L.Ed.2d 502 (1999). As inability to pay restitution by virtue of imprisonment is not an aspect of Smith's character or offense, it does not fall within that definition. Recognizing such a mitigator would entitle a defendant to mitigation every time a sentence included prison time and payment of restitution.

## 2. *Appropriateness of Sentence* [3]

 Even if a trial court does not abuse its discretion in determining a sen-

---

**3.** The State asserts, without citation to authority, that Smith "negotiated the very outcome which he now claims is inappropriate.... The Defendant should not be heard to now say that the sentence which he negotiat-

ed is inappropriate." (Br. of Appellee at 9–10.) We direct the State to *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind.2006), where our Supreme Court explicitly rejected the notion that a defendant who managed to negotiate a

tence, we may conduct an independent review considering the nature of the offense and the character of the offender. *Anglemyer*, 868 N.E.2d at 491 (citing Appellate Rule 7(B)). We analyze only "the length of the aggregate sentence and how it is to be served," because "whether these are derived from multiple or single counts, involve maximum or minimum sentences, and are concurrent or consecutive is of far less significance than the aggregate term of years." *Cardwell*, 895 N.E.2d at 1224. At the end of the day, whether a sentence is appropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id.* Smith's seven-year sentence is not inappropriate.

Smith was an active participant in the crimes. He helped his accomplice find cars to steal and he was driving a stolen vehicle when substantial property damage was done to the pool and golf course. He attributed his poor decision-making on the day of the offenses to his voluntary intoxication on drugs for which he did not have a prescription, and he showed police a tattoo on his arm commemorating his first vehicle theft. We cannot say a seven-year sentence is inappropriate in light of Smith's character and the nature of his offenses.

### 3. *Probation Requirement*

■ As a condition of probation, Smith was required to submit to polygraph examinations about his drug use and knowledge of drug trafficking. The court order indicated the results of the examinations would be admissible in subsequent court proceedings and any unfavorable results would constitute a probation violation. While the court may order Smith to take those examinations, the stated uses of those test results are improper.

We recently held:

[W]e find that the portion of the probation condition at issue herein providing that results of a polygraph examination are admissible in future court proceedings is impermissible and direct the trial court to strike this part of the condition. It is permissible, however, to require that Hoeppner submit to these examinations, the results of which may be used in future probation revocation proceedings. We acknowledge Hoeppner's concern that the clause seems to deprive him of due process rights by stating that positive results will constitute a probation violation, seemingly removing the State's obligation to prove that a violation has, in fact, occurred. *See* Ind.Code § 35–38–2–3(e) (providing that the State must prove a probation violation by a preponderance of the evidence).

*Hoeppner v. State,* 918 N.E.2d 695, 700 (Ind.Ct.App.2009).[4] We instructed the sentencing court in *Hoeppner* to amend that condition of probation to read:

You shall submit to a lie detection test and/or alcohol and drug detection test equipment, as requested by your probation officer, to determine personal drug and/or alcohol use and your knowledge of drug trafficking. . . . Positive results in a lie detection test may be used against you in a probation revocation

sentence cap had agreed that cap would be an appropriate sentence:

Of course a defendant must persuade the appellate court that his or her sentence has met this inappropriateness standard of review. But to say that a defendant has acquiesced in his or her sentence or has implicitly agreed that the sentence is appropriate undermines in our view the scope of authority set forth in Article VII, Section 4 of the Indiana Constitution.

4. Hoeppner was Smith's co-defendant.

proceeding and may constitute a violation of your probation.

*Id.*

We accordingly direct the sentencing court on remand to amend Smith's conditions of probation to the same effect.[5]

## CONCLUSION

The trial court did not abuse its discretion in declining Smith's proposed mitigators, and his sentence is not inappropriate. However, the probation condition regarding polygraph tests must be amended.

Affirmed in part, reversed in part, and remanded.

BAILEY, J., and BARNES, J., concur.

---

5. In its brief, the State notes our *Hoeppner* decision, but does not acknowledge the portion of the decision addressing the probation condition. Nor does it otherwise acknowledge or address Smith's argument regarding that condition of probation.