Clarence SEELEY, Jr., Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 21A05–1003–CR–167.

Court of Appeals of Indiana.

Nov. 15, 2010.

Gregory F. Zoeller, Attorney General of Indiana, Joby D. Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

John Pinnow, Special Assistant to the State Public Defender, Greenwood, IN, Attorney for Appellant.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Clarence Seeley, Jr., appeals his conviction for dealing in a schedule III controlled substance, as a Class A felony, and for

being an habitual offender. Seeley raises the following three issues for our review:

1. Whether he was entitled to a jury instruction stating that he was only "briefly" within 1,000 feet of school property because the drug transaction was short in time, even though it occurred at his permanent residence;

2. Whether the State presented sufficient evidence to demonstrate that the alleged crime occurred within 1,000 feet of school property; and

3. Whether the State presented sufficient evidence to support the habitual offender enhancement.

We hold that Seeley was not entitled to his proffered jury instruction and that the State presented sufficient evidence for the jury to conclude that Seeley's crime occurred within 1,000 feet of school property. However, the State concedes, and we agree, that it did not demonstrate that Seeley was an habitual offender. Accordingly, we affirm in part and reverse and remand in part.

## FACTS AND PROCEDURAL HISTORY

Sometime between 5:00 and 6:00 p.m. on December 4, 2008, Seeley sold twenty pills containing hydroquinone, a schedule III controlled substance, to a confidential informant in a controlled drug buy for $140. The controlled drug buy occurred at Seeley's home in Connersville and lasted between five and ten minutes.[1] Seeley's property was 545 feet from St. Gabriel's school property, and Seeley's front door was 810 feet from the door to the school.

On April 13, 2009, the State charged Seeley with dealing in a schedule III controlled substance, as a Class A felony. *See* Ind.Code § 35–48–4–2(b)(2) (2008). On April 15, the State alleged that Seeley was an habitual offender based on at least two prior, unrelated felony convictions. *See* I.C. § 35–50–2–8(a). The State's habitual offender allegation did not allege that any of the prior convictions were drug offenses.

On February 1, 2010, the trial court held Seeley's jury trial. During the discussion of final jury instructions, the State tendered the following instruction:

If you determine that the State proved beyond a reasonable doubt that the possession of cocaine occurred in, on or within one thousand (1,000) feet of school property, you may consider the following defense to Dealing in a Controlled Substance Within 1,000 Feet of School Property as charged in Count 1.

It is a defense that the defendant was briefly in, on, or within one thousand (1,000) feet of school property, and no person under eighteen (18) years of age was in, on or within one thousand (1,000) feet of the school property at the time of the offense.

The defendant must prove this defense by a preponderance of the evidence. However, if the State negates one element of this defense, you may find the Defendant guilty of Dealing in a Controlled Substance Within 1,000 Feet of School Property as charged in Count 1.

If the defendant proves this defense by a preponderance of the evidence, you may find the defendant [not] guilty of

---

1. At Seeley's trial, the State presented evidence that the confidential informant believed at least one of Seeley's minor children was at the residence at the time of the sale. However, Seeley's cross examination of the confi-

dential informant focused on placing his credibility in doubt. For purposes of this opinion, we do not consider whether any of Seeley's children were present at the time of the controlled drug buy.

Dealing in a Controlled Substance, as charged in Count 1.

Appellant's App. at 60. Seeley agreed to the State's proposed instruction on the theory that the term "briefly" should focus on the length of the transaction itself and not on the duration of the defendant's physical proximity to the school's property during the transaction. The trial court, however, concluded that, because "[Seeley] was living there, it is clear that he was there for more than just a mere passing." Transcript at 155. Accordingly, the court refused to tender the State's instruction to the jury.

The jury found Seeley guilty of both dealing within 1,000 feet of school property and of being an habitual offender. The court then sentenced Seeley to eighty years executed in the Department of Correction. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Jury Instruction

Seeley first argues that the trial court erred in rejecting the State's proffered jury instruction. As we have discussed:

"The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Dill v. State,* 741 N.E.2d 1230, 1232 (Ind.2001) (quoting *Chandler v. State,* 581 N.E.2d 1233, 1236 (Ind.1991)). Instruction of the jury is left to the sound judgment of the trial court and will not be disturbed absent an abuse of discretion. *Schmidt v. State,* 816 N.E.2d 925, 930 (Ind.Ct.App. 2004), *trans. denied.* Jury instructions are not to be considered in isolation, but as a whole and in reference to each other. *Id.* The instructions must be a complete, accurate statement of the law which will not confuse or mislead the jury. *Id.* at 930–31. Still, errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise. *Id.* at 933 (citing *Dill,* 741 N.E.2d at 1233).

*Williams v. State,* 891 N.E.2d 621, 630 (Ind.Ct.App.2008). Further:

In reviewing a challenge to a jury instruction, we consider: (1) whether the instruction is a correct statement of the law; (2) whether there was evidence in the record to support giving the instruction; and (3) whether the substance of the instruction is covered by other instructions given by the court.

*Simpson v. State,* 915 N.E.2d 511, 519 (Ind.Ct.App.2009) (quotation omitted), *trans. denied.*

Under Indiana law, a person who knowingly or intentionally delivers a schedule III controlled substance commits dealing in a schedule III controlled substance, as a Class B felony. *See* I.C. § 35–48–4–2(a). The offense is a Class A felony if "the person delivered ... the substance ... in, on, or within one thousand (1,000) feet of ... school property...." I.C. § 35–48–4–2(b). However:

(b) It is a defense for a person charged under this chapter ... that: (1) a person was briefly in, on, or within one thousand (1,000) feet of school property ...; and (2) no person under eighteen (18) years of age at least three (3) years junior to the person was in, on, or within one thousand (1,000) feet of the school property....

\* \* \*

(d) The defense under this section applies only to the element of the offense that requires proof that the delivery,

financing of the delivery, or possession of cocaine, a narcotic drug, methamphetamine, or a controlled substance occurred in, on, or within one thousand (1,000) feet of school property. . . .

I.C. § 35–48–4–16.

Our Supreme Court recently discussed that statutory defense:

> Indiana Code Section 35–48–4–16(b) constitutes a mitigating factor that reduces culpability, and therefore the defendant does not have the burden of proof but "only the burden of placing the issue in question where the State's evidence has not done so." Once at issue, the State must rebut the defense by proving beyond a reasonable doubt either that the defendant was within 1,000 feet of a public park more than "briefly" or persons under the age of eighteen at least three years junior to the defendant were within 1,000 feet of the [protected space] (because both factors are required to effectuate the mitigation [2]).
>
> *      *      *
>
> While the evidence [here] was insufficient to rebut the absence-of-children prong of the defense, adequate rebuttal of the first prong—proving that the defendant's presence within the proscribed zone was more than "briefly"—would have defeated the defense, which requires the existence of both prongs.

The term "briefly" is not defined by statute, nor by caselaw. In *Harrison [v. State]*, the Court of Appeals declined to "precisely determine the duration of a brief period of time," but concluded that the defendant's walking 297 feet into a proscribed zone, delivering cocaine, and then walking away was insufficient to prove that the defendant was within the proscribed zone "for more than a brief time." 901 N.E.2d [635, 643 (Ind.Ct. App.2009), *trans. denied* ]. Common usage dictionaries typically define the adjective "brief" to mean short in duration, length, or extent; succinct; concise; abrupt; or curt. These definitions, like the word "briefly" itself, imply a relative comparison, not the mere abstract passage of a discrete period of time.

Chosen by the legislature to serve as one element of the statutory defense, the word "briefly" is not free from ambiguity. If intended only to refer to some abstract passage of time, the legislature easily could have chosen to phrase the defense in terms of a specific duration of intrusion into the proscribed zone, e.g., "forty-five seconds," "five minutes," "fifteen minutes," "one hour," etc. As a qualification of the defense applicable when a defendant is in the proscribed zone no more than "briefly," the word implies that such duration must be determined in relation to other considerations, not merely an abstract, temporal component.

The criminal offenses to which the defense applies enhance a defendant's penal consequences for illegal drug activity committed near areas where children are likely to be present. *The statutory defense operates to excuse a defendant from the required enhancement when his presence in the proscribed zone only minimally increases the risk to children. The "briefly" requirement should be interpreted in a manner consistent with this purpose.* Thus, when a defendant's presence in the proscribed zone is primarily for a purpose other than illicit drug activity, the risk to children is smaller and the controlled drug buy.

---

2. Again, we do not consider whether any of Seeley's children were present at the time of

word "briefly" could encompass a greater duration of time. One example of this would be the traversing within a proscribed area without tarrying but while in concealed, illegal possession of drugs. On the other hand, when the principal purpose of a defendant's presence in the zone is to actively engage in criminal drug activity, especially if such activity is visible to any children, even a relatively short intrusion into the proscribed zone would be more than "brief" and thus should not excuse the defendant from the enhancement. We therefore understand "briefly," as used in the statutory enhancement defense, to mean a period of time no longer than reasonably necessary for a defendant's intrusion into the proscribed zone principally for conduct unrelated to unlawful drug activities, provided that the defendant's activities related to the charged offense are not visible.

*Griffin v. State,* 925 N.E.2d 344, 347, 349–50 (Ind.2010) (emphasis added; footnotes, some citations, and some quotations omitted). And, in a companion case to *Griffin,* our Supreme Court expressly rejected the defendant's claim that "he [was] entitled to relief based on his statutory defense ... because 'the transaction lasted only long enough for the pills to be procured and handed to [the informant].'" *Gallagher v. State,* 925 N.E.2d 350, 354–55 (Ind.2010) (citation omitted).

■ Again, Seeley contends that the State's proffered jury instruction should have been given to the jury. Specifically, Seeley asserts that, since he lived at the residence where the drug transaction occurred, his physical proximity to the school property is irrelevant for purposes of the statutory defense. Instead, he continues, the "briefly" element of the statutory defense should be interpreted on these facts

to apply only to the length of the controlled drug buy and, therefore, the statutory defense was available to him and he was entitled to have the jury instructed accordingly.

Seeley was not entitled to the proffered jury instruction because, as the trial court correctly stated, there was no evidence in the record that supported giving the instruction. Contrary to Seeley's contentions, the "briefly" language relates to "his presence in the proscribed zone," not to the length of the transaction. *See Griffin,* 925 N.E.2d at 349; *Gallagher,* 925 N.E.2d at 354–55. To be sure, in some scenarios the defendant's presence in the proscribed zone will be coextensive with the illegal transaction. *See, e.g., Gallagher,* 925 N.E.2d at 354–55 (affirming the defendant's enhanced conviction). But that is not the case here, where Seeley lived within 1,000 feet of school property.

Counterintuitively, it is precisely because of his extended stay in the proscribed zone that Seeley contends he is entitled to the statutory defense. First, Seeley suggested to the trial court that it would be unconstitutional not to permit him to inform the jury of the statutory defense simply because of where he owned property and/or lived. *See* Transcript at 151–53. This argument has been abandoned on appeal and we do not consider it. *See* Ind. Appellate Rule 46(A)(8)(a).

Seeley also contends that the length of the transaction is what matters here because, when viewed in the context of his total stay in the proscribed zone, the time spent on the illegal transaction "only minimally increase[d] the risk to children." Appellant's Br. at 10–11 (quoting *Griffin,* 925 N.E.2d at 349). Similarly, Seeley suggests that the "period of time no longer than reasonably necessary for [his] intrusion into the proscribed zone ... for conduct unrelated to [the] unlawful drug activ-

ities" was, in essence, the whole of his time living at the residence. *Id.* at 11 (quoting *Griffin*, 925 N.E.2d at 349–50). We cannot agree with Seeley's reading of case law.

■ Applying "briefly" in the manner asserted by Seeley would wholly negate that prong of the statutory defense. When a defendant lives in the proscribed zone and he has turned his home into a place where controlled substances may be illegally purchased, he cannot be in the proscribed zone only "briefly." Such conduct does not "minimally increase[ ] the risk to children" nearby; rather, it greatly increases the risk. *See Griffin*, 925 N.E.2d at 349. And, as our Supreme Court has held, we must interpret the statute "in a manner consistent with th[at] purpose." *Id.*

The evidence unequivocally demonstrated that Seeley was not "briefly" within 1,000 feet of school property when he illegally sold a controlled substance from his residence. As such, there was no evidence in the record to support the giving of the proffered jury instruction on the statutory defense. Therefore, the trial court did not abuse its discretion in refusing to tender that instruction to the jury. *See Simpson*, 915 N.E.2d at 519.

### Issue Two: Sufficient Evidence

■ Seeley next contends that the State did not present sufficient evidence that St. Gabriel's was "school property" under Indiana Code Section 35–41–1–24.7. When reviewing a claim challenging the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind.2003). We look only to the probative evidence supporting the verdict and the reasonable inferences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Id.* If there is

substantial evidence of probative value to support the conviction, it will not be set aside. *Id.*

Again, to demonstrate that Seeley committed dealing in a schedule III controlled substance, as a Class A felony, the State had to show, among other things, that Seeley committed his crime within 1,000 feet of school property. I.C. § 35–48–4–2(b). Under the Indiana Code, "school property" is:

(1) A building or other structure owned or rented by:

　(A) a school corporation;

　(B) an entity that is required to be licensed under IC 12–17.2 or IC 31–27;

　(C) a private school that is not supported and maintained by funds realized from the imposition of a tax on property, income, or sales; or

　(D) a federal, state, local, or nonprofit program or service operated to serve, assist, or otherwise benefit children who are at least three (3) years of age and not yet enrolled in kindergarten, including the following:

　　(i) A Head Start program under 42 U.S.C. 9831 *et seq.*

　　(ii) A special education preschool program.

　　(iii) A developmental child care program for preschool children.

(2) The grounds adjacent to and owned or rented in common with a building or other structure described in subdivision (1).

I.C. § 35–41–1–24.7.

In *Whitt v. State*, 659 N.E.2d 512 (Ind. 1995), our Supreme Court considered whether the State had presented sufficient evidence of "school property" for purposes of a similar crime. The State's only evidence on that question was presented by a

witness who had measured the distance between the location of the defendant's arrest and the location of the subject property. The witness stated, "I measured the distance from the location of the arrest to the location of Irwin Elementary School, which is located at 3501 South Anthony." *Id.* at 513. Based only on that simple statement, our Supreme Court (reversing this court) held that "[t]he appropriate weight of this evidence was exclusively within the province of the jury." *Id.* As such, the Court could not say that the State's evidence, though meager, was legally insufficient.

Here, the State called the Fayette County Surveyor as a witness. The following colloquy occurred on direct examination:

Q: [Okay.] Have you had occasion to measure the distance between [Seeley's property] and St. Gabriel['s] school property?

A: Yes.

\* \* \*

A: ... I ran a measurement on the GIS system from the southeast corner of [Seeley's property] over to the St. Gabriel property. It measured 545 feet.

\* \* \*

Q: Okay. There at St. Gabriel's there's more than just a school, right?

A: Yes.

Q: What else is there?

A: Church.

Q: [Okay.] What did you measure to?

A: I measured to the very left side of the church property ... right behind where the sidewalk would be on Western Avenue. About half-way between where the trestle's at and where the ... house where the priest live[s].

Transcript at 55–56. And, on redirect, the County Surveyor testified that a second measurement was taken: "We ... meas-

ured from the front of the house and measured over to the back door of the actual school building. And I figured a straight line distance between those two points and it's 810.97 feet." *Id.* at 94. Seeley did not object to the County Surveyor's testimony.

In light of the County Surveyor's testimony and our Supreme Court's holding in *Whitt* we must conclude that the State's evidence was sufficient for the jury to find that St. Gabriel's property was "school property." *See Whitt,* 659 N.E.2d at 513. We note that Seeley cites cases from foreign jurisdictions, suggesting that more is required of the State. *See* Appellant's Br. at 14–15. However, as a matter of Indiana law, *Whitt* is controlling and unambiguous. If the State presented sufficient evidence in *Whitt,* then it clearly did so here.

### Issue Three: Habitual Offender Finding

■ Finally, Seeley contends that the State failed to present sufficient evidence to support its claim that he was an habitual offender. The State properly concedes this issue.

Indiana Code Section 35–50–2–8(b) states as follows:

The state may not seek to have a person sentenced as a habitual offender for a felony offense under this section if:

\* \* \*

(3) all of the following apply:

(A) The offense is an offense under IC 16–42–19 or IC 35–48–4.

(B) The offense is not listed in section 2(b)(4) of this chapter.

(C) The total number of unrelated convictions that the person has for:

(i) dealing in or selling a legend drug under IC 16–42–19–27;

(ii) dealing in cocaine or a narcotic drug (IC 35–48–4–1);

(iii) dealing in a schedule I, II, III controlled substance (IC 35–48–4–2);

(iv) dealing in a schedule IV controlled substance (IC 35–48–4–3); and

(v) dealing in a schedule V controlled substance (IC 35–48–4–4);

does not exceed one (1).

Seeley's instant offense is an offense under Indiana Code Chapter 35–48–4, and it is not listed under Indiana Code Section 35–50–2–2(b)(4). Thus, the first two prongs of the Indiana Code Section 35–50–2–8(b)(3) exclusion are met. Further, the State's basis of the habitual offender allegation was Seeley's four prior felony convictions. Those four convictions were a 1985 Class B felony burglary; a 2004 Class C felony battery; a 2006 Class D felony receiving stolen property; and a 2006 Class D felony intimidation. None of these prior convictions were predicate offenses. Accordingly, the total number of Seeley's unrelated convictions for the dealing crimes specified in Indiana Code Section 35–50–2–8(b)(3)(C) does not exceed one. Thus, these convictions were insufficient as a matter of law for Seeley to be found an habitual offender. *See* I.C. § 35–50–2–8(b).

### Conclusion

In sum, we hold that Seeley was not entitled to have the jury instructed on the statutory defense that he was only "briefly" within 1,000 of school property at the time of his crime. We also hold that the State presented sufficient evidence that St. Gabriel's School was "school property" for purposes of the statutory enhancement. However, the State presented insufficient evidence for the jury to conclude that Seeley was an habitual offender. Accordingly, we affirm Seeley's Class A felony conviction, but we reverse the habitual offender finding against Seeley. We remand to the trial court for resentencing.

Affirmed in part and reversed and remanded in part.

BAKER, C.J., and MATHIAS, J., concur.