# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 18 2016, 8:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

P. Jeffrey Schlesinger
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Albert L. Armstrong,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 18, 2016<br><br>Court of Appeals Case No.<br>45A05-1506-CR-622<br><br>Appeal from the Lake Superior Court<br><br>The Honorable Salvador Vasquez, Judge<br><br>Trial Court Cause No.<br>45G01-1406-FB-42 |

**Altice, Judge.**

**Case Summary**

[1] Following a jury trial, Albert L. Armstrong was convicted of Dealing in a Narcotic Drug, a class B felony, and sentenced to fifteen years in prison. On appeal, Armstrong argues that the trial court abused its discretion by rejecting a proposed final instruction. Armstrong also challenges his sentence.

[2] We affirm.

## Facts & Procedural History

[3] On June 2, 2014, a confidential informant for the Hammond Police Department (the CI) notified Officer Jason Schafbuch regarding a possible drug buy. The CI indicated that Armstrong had agreed to provide her with three bags of heroin in exchange for $50. They were to meet at a Speedway gas station at the 7400 block of Calumet Avenue in Hammond, and Armstrong indicated he would be arriving in a gray station wagon.

[4] After speaking with the CI, Officer Schafbuch obtained a photograph of Armstrong and discovered that Armstrong had an active warrant. Officer Schafbuch recruited three other officers to assist. The plan was to wait for Armstrong to arrive at the Speedway and then have the CI tell him to meet her at another Speedway north on Calumet. Armstrong would be stopped and arrested on the way to the second location. The officers set up surveillance in various locations near the initial Speedway location.

[5] Around 1:00 p.m., a gray station wagon with three men inside pulled into the Speedway and parked. The driver and the front seat passenger walked into the

store. Armstrong stepped out of the back seat and spoke on his cellphone while walking toward the store. Within minutes, all three men reentered the station wagon and proceeded north on Calumet in the direction of the other Speedway location. Officers initiated a stop within two blocks of the first location.

[6] Officer Eusebio Gonzalez immediately opened the rear passenger door of the station wagon and grabbed Armstrong by the right wrist while another officer went to the driver. Armstrong had a Newport cigarette box in his left hand, which he quickly put down and pushed to the side. After placing Armstrong in handcuffs, Officer Gonzalez retrieved the cigarette box from the backseat. Inside the box was a candy wrapper containing four aluminum foil packets. Based upon his training and experience, Officer Gonzalez believed the foil packets to contain heroin. Later laboratory testing confirmed the presence of less than one gram of heroin.

[7] When Officer Schafbuch approached Armstrong while in custody at the scene, Armstrong "immediately blurted out: 'That stuff is mine. I know what you found. I was set up. I know what time it is.'" *Trial Transcript* at 148. Armstrong also gave a voluntary, recorded statement at the police station in which he admitted that he was planning to sell three packets of heroin to the CI for $50. He stated that the Newport box was his and that the other two men in the car were unaware of the planned drug sale.

[8] The State charged Armstrong with class B felony dealing in a narcotic drug and class D felony possession of a narcotic drug. On April 1, 2015, a jury found

him guilty as charged.  At the sentencing hearing on April 29, 2015, the trial court entered judgment of conviction on the dealing count only and sentenced Armstrong to fifteen years executed.  Armstrong now appeals.  Additional facts will be provided below as needed.

## Discussion & Decision

## Proposed Final Instruction

[9]     Armstrong challenges the trial court's denial of the following proposed final jury instruction:

> The term "delivery" means an actual or constructive transfer from one (1) person to another of a controlled substance, whether or not there is an agency relationship, or the organization or supervision of an actual or constructive transfer from one (1) person to another of a controlled substance, whether or not there is an agency[.]

*Appellant's Appendix* at 81.  He argues that it was critical for the jury to have a definition of delivery to determine whether he intended to deliver the heroin.

[10]    The trial court rejected the proposed instruction finding that it could mislead or confuse the jury by singling out the word delivery from the element of intent to deliver.[1]  The court noted that the real issue at hand was Armstrong's state of mind at the time of his possession, not whether he delivered the heroin – which

---

[1] To convict Armstrong of dealing as charged, the State was required to prove beyond a reasonable doubt that he (1) knowingly or intentionally (2) possessed heroin (3) with intent to deliver.  Ind. Code § 35-48-4-1.

he unquestionably did not. Thus, the trial court essentially determined that the evidence in the record did not support giving the instruction. *See Springer v. State*, 798 N.E.2d 431, 433 (Ind. 2003) (upon review of a refusal to give a tendered instruction, we consider "whether there is evidence in the record to support the giving of the instruction"). The trial court did not abuse its discretion in this regard.

[11] Moreover, even if the trial court's rejection of the instruction was erroneous, it was harmless. Instructional errors are "harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise." *Seeley v. State*, 936 N.E.2d 863, 866 (Ind. Ct. App. 2010), *trans. denied*. It was undisputed that Armstrong knowingly or intentionally possessed the heroin in question. The only dispute at trial was whether he possessed it with intent to deliver. The evidence in this regard was ample. Indeed, in a recorded interview following his arrest, Armstrong admitted that he went to Fifth Street to pick up the heroin before going to meet the CI to sell it to her for $50. The evidence overwhelmingly supports Armstrong's conviction.

## Sentence

[12] Armstrong challenges his fifteen-year sentence on two grounds. First, he contends that the trial court abused its discretion by failing to find mitigating circumstances clearly supported by the record. Second, he argues that his sentence is inappropriate. We will address each argument in turn.

[13] With respect to mitigating circumstances, Armstrong notes on appeal that he proffered several below: his cooperation with police following arrest, participation in a rehabilitative program while in jail, and his positive relationship with his children. He asserts that the trial court's failure to address any of the proposed mitigating circumstances constitutes an abuse of discretion.

[14] Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal for an abuse of discretion. *Lewis v. State*, 31 N.E.3d 539, 541 (Ind. Ct. App. 2015). One way in which a trial court may abuse its discretion is with a sentencing statement that omits reasons that are clearly supported by the record and advanced for consideration. *Id.* at 542. A trial court, however, need not consider proffered mitigating circumstances that are highly disputable in nature, weight, or significance. *Creekmore v. State*, 853 N.E.2d 523, 530 (Ind. Ct. App. 2006), *clarified on reh'g*, 858 N.E.2d 238. On appeal, the burden rests with Armstrong to establish that the mitigating evidence is both significant and clearly supported by the record. *Carter v. State*, 711 N.E.2d 835, 838 (Ind. 1999).

[15] Aside from asserting that the mitigating circumstances were raised below, Armstrong makes no argument that they were significant. They were not. With respect to his alleged positive relationship with his children, we observe that "[m]any persons convicted of serious crimes have one or more children and, absent special circumstances, trial courts are not required to find that imprisonment will result in an undue hardship." *Dowdell v. State,* 720 N.E.2d 1146, 1154 (Ind. 1999). Similarly, Armstrong's cooperation with authorities

was not entitled to mitigating weight because it came only after he was apprehended. *See Smith v. State*, 929 N.E.2d 255, 259 (Ind. Ct. App. 2010) (cooperation was a pragmatic decision made only after arrest and not entitled to mitigating weight), *trans. denied*. Finally, the record is vague with respect to Armstrong's participation in treatment while in prison. There is no indication that this alleged mitigating circumstance was significant and clearly supported by the record. In sum, Armstrong has failed to establish an abuse of discretion by the trial court.

[16] Additionally, Armstrong argues that his sentence is inappropriate. He acknowledges his extensive criminal history but claims "the record suggests factors in [his] character which suggest he would be responsive to rehabilitation." *Appellant's Brief* at 11. In this regard, he again notes his cooperation with police, his participation in a rehabilitative program while in jail, and his relationship with his children. Further, with respect to the nature of the crime, Armstrong observes that the amount involved was small and that he was only dealing to support his own drug habit.

[17] Pursuant to Ind. Appellate Rule 7, we may revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Inman v. State*, 4 N.E.3d 190, 203 (Ind. 2014) (quoting App. R. 7). Our review in this regard is "very deferential" to the trial court. *See Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the

offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[18] "The principal role of such review is to attempt to leaven the outliers." *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013). It is not our goal in this endeavor to achieve the perceived "correct" sentence in each case. *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014). Accordingly, "the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original). Armstrong bears the burden of persuading us that his sentence is inappropriate. *See Conley*, 972 N.E.2d at 876.

[19] Armstrong received a fifteen-year sentence, which is half-way between the maximum and advisory sentences of twenty and ten years, respectively, for a class B felony. *See* Ind. Code § 35-50-2-5. He contends that fifteen years is inappropriate in light of his character and suggests an aggravated sentence of twelve years.

[20] We agree that at first blush the nature of his offense is not particularly aggravating. He was found in possession of a small amount of heroin that he planned to sell in order to support his drug habit. What is aggravating, however, is that Armstrong was out on bail for a charge of dealing in cocaine when he committed this crime.

[21] Contrary to his assertions on appeal, nothing about Armstrong's character suggests that his sentence is inappropriate. His poor character is reflected by his extensive criminal history. Specifically, the PSI indicates that he has at least four misdemeanor convictions in Indiana, two misdemeanor convictions in Tennessee, and a federal conviction for conspiracy to possess with intent to distribute cocaine. With respect to his federal conviction in 1999, Armstrong served time in federal prison and was then placed on supervised release. He violated the conditions of supervised release twice and was returned to prison after his second violation in 2008. Shortly after being released from prison, he committed possession of marijuana and violated probation on three separate occasions. Thereafter, he continued to amass arrests and convictions. As mentioned above, this included an arrest in December 2013 for dealing in cocaine for which he was out on bail when he committed the instant offense. On this record, we find no support for Armstrong's self-serving claim that he is now determined to correct his criminal past.

[22] Sentencing revision is not supported by the nature of the offense or Armstrong's character. Accordingly, we do not find his fifteen-year sentence inappropriate.

[23] Judgment affirmed.

[24] Robb, J. and Barnes, J., concur.