## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 01 2018, 10:22 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Marion County Public
Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Justin Kasten,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

May 1, 2018

Court of Appeals Case No.
49A02-1711-CR-2654

Appeal from the Marion Superior Court

The Hon. Grant W. Hawkins, Judge

Trial Court Cause No.
49G05-1505-MR-18447

**Bradford, Judge.**

# Case Summary

In February of 2015, Justin Kasten, who was in need of money, formulated a plan with two confederates—all three armed with handguns—to rob a marijuana dealer. When the dealer arrived, one of Kasten's accomplices pointed a gun at the dealer, and gunfire soon erupted. Although there is no evidence that Kasten fired a shot, the dealer and his companion were both killed in the shootout. Kasten was convicted of and sentenced for two counts of felony murder, receiving an aggregate sentence of ninety-five years of incarceration. Kasten contends that his sentence is inappropriately harsh. Because we disagree, we affirm.

# Facts and Procedural History

On the evening of February 17, 2015, Kasten, Sean Wright, a male named Caleb, and William Haskett were in Haskett's house at 1044 South Harlan Street in Indianapolis. Kasten mentioned that he needed money, and Wright suggested that they could make money quickly by stealing from a person he knew to be a marijuana dealer. The plan was for Wright to point a gun at the person with the marijuana, take the drugs, and hand the drugs to Kasten. To this end, the quartet apparently arranged for Daniel White and Devin Calloway to come to the area in the belief that the duo would be in possession of marijuana.

[3]     When the vehicle with White and Calloway arrived, Wright climbed into the rear seat behind White, Kasten stood outside the vehicle near Wright, and Caleb walked around to the passenger side. Wright, Caleb, and Kasten were all armed with firearms, and Wright pointed a handgun at White. Kasten was standing outside the vehicle, waiting to be given the marijuana, when the shooting started.

[4]     While Kasten suffered a gunshot wound to his neck and arm, White and Calloway fared much worse, both dying. Calloway was shot three times, including a shot in the back that perforated his heart and one to the head, either of which would have been fatal. White was shot five times, including shots (1) in his left eye that went through his brain, (2) to his neck that damaged his heart before the bullet lodged itself in his spinal column, and (3) in the back that went through his heart and left lung, any one of which would have been fatal.

[5]     On May 28, 2015, the State charged Kasten with two counts of felony murder and one count of Level 3 felony attempted robbery. On September 27, 2017, following a three-day trial, a jury found Kasten guilty as charged. On October 20, 2017, the trial court held a sentencing hearing, merged the robbery conviction into one of the felony murder convictions, and imposed consecutive sentences of forty-seven and one-half years for each felony murder conviction, for an aggregate sentence of ninety-five years of incarceration.

# Discussion and Decision

[6] Kasten contends that his ninety-five-year sentence imposed following his conviction of two counts of felony murder in inappropriately harsh. We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Shouse v. State*, 849 N.E.2d 650, 660 (Ind. Ct. App. 2006), *trans. denied* (citations and quotation marks omitted). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). In addition to the "due consideration" we are required to give to the trial court's sentencing decision, "we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007).

[7] As for the nature of Kasten's offenses, they arose out of a remarkably ill-conceived scheme to rob a known drug dealer at gunpoint, which not surprisingly resulted in gunfire and two persons losing their lives. As the trial court stated, "the most important factor … is there are two deaths." Tr. Vol. III p. 499. Indiana courts have long recognized that consecutive sentences are

appropriate when more than one victim is harmed. *See, e.g.*, *Myers v. State,* 27 N.E.3d 1069, 1082 (Ind. 2015); *Cardwell*, 895 N.E.2d at 1225 ("Whether the counts involve one or multiple victims is highly relevant to impose consecutive sentences"). The Indiana Supreme Court has noted that consecutive sentences seem "necessary to vindicate the fact that there were separate harms and separate acts against more than one person." *Serino v. State*, 798 N.E.2d 852, 857 (Ind. 2003). The nature of Kasten's offenses, and the devastating effect they had, supports the imposition of a lengthy sentence.

[8] Kasten's decision to participate in the attempted robbery demonstrates his poor character. Needing money to raise a child, rather than work, Kasten agreed to participate in a dangerous crime without hesitation. Kasten demonstrated remorse for his participation only to the extent that he told police that he should have sold his gun instead. There is no indication that Kasten needed to be coerced into participating in the robbery or tried to talk the others out of it. Instead, the evidence indicates that Kasten willingly did his part and was ready to take the marijuana out of the car window, had things gone as planned.

[9] Kasten's poor character is further demonstrated by his criminal behavior and supports the appropriateness of his sentence. Kasten's juvenile record, while not particularly serious, nonetheless reflects poorly on his character. *See Reis v. State*, 88 N.E.3d 1099, 1105 (Ind. Ct. App. 2017) (holding that even a minor criminal record reflects poorly on a defendant's character). Kasten had a battery charge dismissed following completion of supervised release and a true finding on a criminal trespass charge. In addition to his charged misconduct,

Kasten regularly used marijuana prior to his arrest. Furthermore, Kasten's possession of a firearm during the attempted robbery was illegal. *See* Ind. Code § 35-47-2-3(g) (a license to carry a handgun shall not be issued to a person under 18 years of age); Ind. Code § 35-47-2-1(a), -1(e) (carrying a handgun without a license is a Class A misdemeanor). Kasten's prior behavior that is criminal, though not charged, is properly considered by this Court. *See, e.g.*, *Harlan v. State*, 971 N.E.2d 163, 170 (Ind. Ct. App. 2012) ("Allegations of prior criminal activity need not be reduced to conviction before they may properly be considered aggravating circumstances by a sentencing court."). Kasten's disregard for the law reflects poorly on his character.

[10] Kasten argues in part that his sentence should be reduced because this was a felony murder and that he played a relatively minor role. Regardless of whether Kasten was the shooter, he willingly participated in a crime when he and his co-conspirators were all armed with handguns. Even if Kasten did not expect his confederates to shoot, the crime he agreed to was inherently dangerous and posed a substantial risk of injury and death to all involved, especially because the intended victim was a known drug dealer. To the extent that Kasten deserves consideration for his allegedly minor role in the murders, we note that the trial court imposed sentences significantly shorter than the advisory sentence for felony murder, which is fifty-five years. Ind. Code § 35-50-2-3. Kasten's mitigated sentence adequately addresses Kasten's role as an accomplice.

[11]     Kasten argues that his own injuries during the commission of the crime merit consideration in the appropriateness of his sentence. Kasten's injuries were the result of his own conduct and agreement to participate in a particularly dangerous crime. Indeed, Kasten's injury demonstrates the severity of the crime and does not merit mitigating consideration. Kasten also argues that because he cooperated with the police at one interview he should receive a lesser sentence. We note that, in general, cooperation with the police after a defendant is apprehended represents a pragmatic decision and is not entitled to mitigating weight. *Smith v. State*, 929 N.E.2d 255, 259 (Ind. Ct. App. 2010). That seems to have been the case here, as Kasten emphasized that had he played only a minor role in the robbery. Moreover, Kasten's cooperation with the police was short-lived. By the time of trial, Kasten had reverted to his initial story about being at Haskett's house, but not remembering anything else from that night. Kasten's cooperation also did not extend to testifying against Wright or Caleb.

[12]     Finally, although we acknowledge Kasten's youth, that does not render his sentence inappropriate in this case. Both the Indiana Supreme Court and the United States Supreme Court have recognized a presumption that juveniles are less culpable than adults based on developments in psychology and brain development. *See Brown v. State*, 10 N.E.3d 1, 7 (Ind. 2014) (citing *Graham v. Florida*, 560 U.S. 40, 68 (2010)). This presumption is primarily based on the notion that there are three main differences between juvenile offenders and adult offenders: (1) juveniles lack maturity; (2) juveniles are more susceptible to

negative influences; and (3) the character of a juvenile is not as well formed as an adult's. *Id.* Be that as it may, those considerations have not led the Indiana Supreme Court to conclude that lengthy sentences for juveniles convicted of serious crimes are necessarily inappropriate. *See, e.g.*, *Taylor*, 86 N.E.3d at 166–67 (concluding that an aggregate sentence of eighty years was appropriate for a seventeen-year old who was convicted of murder and conspiracy to commit murder). At the time of his crimes, Kasten was only two months shy of eighteen years old. Being so close to his majority, Kasten's alleged youth loses a significant portion of its potentially mitigating effect. Moreover, there is no indication that Kasten had a diminished capacity rendering him less mature than others his age. It is also worth noting that Kasten's age was already taken into account by the trial court in reducing each of his sentences below the advisory sentence for felony murder. In light of the nature of his offenses and his character, Kasten has failed to establish that his sentence is inappropriately harsh.

[13] We affirm the judgment of the trial court.

Baker, J., and Kirsch, J., concur.