## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 15 2020, 8:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Kelly M. Starling
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Julius Sapp,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 15, 2020

Court of Appeals Case No.
20A-CR-638

Appeal from the Marion Superior Court

The Honorable Barbara Crawford, Judge

The Honorable Amy Barbar, Magistrate

Trial Court Cause No.
49G01-1907-F3-26746

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Julius Sapp (Sapp), appeals his sentence following his conviction for armed robbery, a Level 3 felony, Ind. Code § 35-42-5-1(a)(1); and battery by means of a deadly weapon, a Level 5 felony, I.C. §§ 35-42-2-1(c)(1); -(g)(2).

We affirm.

# ISSUE

Sapp presents the court with one issue, which we restate as: Whether the trial court abused its discretion when it failed to identify certain proposed mitigating circumstances.

# FACTS AND PROCEDURAL HISTORY

On June 19, 2019, Sapp telephoned Sterling Riggs (Riggs) purportedly to arrange for the purchase of $50 worth of marijuana. Riggs was not acquainted with Sapp but agreed to sell him the marijuana. Around 7:30 p.m., Riggs drove his van to an address Sapp provided to him at an apartment complex located on the west side of Indianapolis. Riggs parked his van when he spotted Sapp. Riggs had brought a firearm with him which he placed on his lap.

Sapp climbed into the passenger-side seat of Riggs' van. Another man accompanying Sapp remained outside the van. Sapp pointed a gun at Riggs and told Riggs he was there to rob him. Riggs and Sapp began to fight in the van. Riggs eventually fired a shot at Sapp, and the physical fighting continued.

Sapp was able to disarm Riggs. The man who had accompanied Sapp picked up Riggs' gun and shot him in the leg. Riggs and Sapp continued to fight, with Sapp getting the upper hand and Riggs' gun. Sapp threatened to kill Riggs if he did not let him take the van. Riggs directed Sapp to take the van, but Sapp fired additional shots at Riggs, wounding him in the leg, hip, and arm. Sapp then fled in Riggs' van.

[6] Riggs was taken to the hospital where he was treated for his injuries, including a shattered leg bone. Riggs supplied investigators with the cellphone number Sapp had used to arrange the marijuana deal, and the cellphone number was quickly linked to Sapp. Riggs subsequently identified Sapp from a photographic array. Sapp was located and interviewed by police. Initially, he denied being at the scene of the offenses. After further questioning, Sapp admitted he had been present but claimed that Riggs had pulled a gun on him and that he had acted in self-defense.

[7] On July 9, 2019, the State filed an Information, charging Sapp with Level 3 felony armed robbery; Level 4 felony unlawful possession of a firearm by a serious violent felon; and Level 5 felony battery by means of a deadly weapon. On January 15, 2020, the trial court convened Sapp's one-day jury trial. The jury found Sapp guilty of all charges. After the jury had rendered its verdicts, the trial court granted the State's motion to dismiss the Level 4 felony possession of a firearm by a serious violent felon charge.

[8] On February 4, 2020, Sapp's presentence investigation report (PSI) was filed with the trial court. In 2013, Sapp was convicted of Class B felony robbery, for which he received a seven-year sentence, with 190 days executed and one year suspended to probation. Sapp began his probation on September 26, 2016, and, on March 20, 2017, the State filed a notice of violation of probation for failing to submit to a drug screen, testing positive for cannabinoids, and failing to comply with substance abuse treatment. Sapp's probation was revoked, and Sapp was sentenced to 180 days. After his release, Sapp was charged with criminal trespass and marijuana possession in 2019, and was later convicted of Class A misdemeanor possession of a controlled substance in a separate case.

[9] Sapp reported to his PSI investigator that he began consuming marijuana at the age of thirteen and alcohol at the age of sixteen. By the time of his arrest on the instant offense, Sapp reported that he was smoking marijuana daily and had become addicted to "rollers," which is a combination of cocaine, methamphetamine, and ecstasy. (Appellant's App. Vol. II, p. 146). Sapp denied using heroin or prescription medications.

[10] Sapp's PSI also revealed that he had never been in special education classes and graduated from high school in 2010 with a 2.8 G.P.A. Sapp also played on his high school's basketball team. From the age of fifteen to nineteen, Sapp worked in a fast food restaurant, and he continued to work in restaurants after he was released from incarceration in 2018. Sapp rated his physical and mental health as "fair." (Appellant's App. Vol. II, p. 146). Sapp reported being assaulted in high school and having a seizure which resulted in his hospitalization. He was

treated and released after two days. Sapp also reported having anger management issues and depression during high school, and he participated in anger management counseling in 2007 or 2008. Sapp had never been prescribed any medication for his mental health.

[11] On February 25, 2020, the trial court held Sapp's sentencing hearing. Sapp filed a sentencing memorandum prepared by a Social Services Administrator employed by the Marion County Public Defender Agency in which Sapp's substance abuse disorder, remorse, traumatic brain injury, and undue hardship to his children were advanced as mitigating circumstances. In the unverified sentencing memorandum, it was represented to the trial court that Sapp had been taking opioids daily and that he had experienced withdrawal in jail. The sentencing memorandum also asserted that Sapp had experienced a traumatic brain injury in 2006 and that such injuries may lead to aggressive behavior.

[12] At Sapp's sentencing hearing, Riggs' impact statement was read into the record. To Riggs the offenses were "a life changing experience" which had left him unable to walk without assistance, unable to work, and in constant pain. (Transcript p. 240). Riggs faced another surgery to attempt to rectify the injuries to his leg. In his allocution, Sapp apologized to Riggs and asked the trial court for leniency. The trial court found as an aggravating circumstance that Sapp had shot Riggs four times without justification, even when Riggs was on the ground. The trial court also found Sapp's criminal record since his recent release from the Department of Correction to be aggravating, including his two arrests, conviction for possession of a controlled substance, and his

separate pending case for unlawful possession of a firearm by a serious violent felon. The trial court found as the sole mitigating circumstance that long-term imprisonment would be a hardship to Sapp's dependents. The trial court found that the aggravating circumstances outweighed the mitigating circumstances and sentenced Sapp to ten years, with one year suspended to probation, for his Level 3 felony armed robbery conviction. The trial court sentenced Sapp to three years for his Level 5 felony battery by means of a deadly weapon conviction, to be served concurrently, for an aggregate sentence of ten years.

[13] Sapp now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

[14] Sapp contends that the trial court abused its discretion when it failed to recognize his additional proffered mitigators. So long as a sentence imposed by a trial court is within the statutory range for the offense, it is subject to review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of the trial court's sentencing discretion occurs if its decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*. A trial court abuses its discretion when it fails to enter a sentencing statement at all, its stated reasons for imposing sentence are not supported by the record, its sentencing statement omits reasons that are clearly supported by the record and advanced

for consideration, or its reasons for imposing sentence are improper as a matter of law. *Id*. at 490-91.

## II. *Mitigating Circumstances*

Sapp contends that the trial court abused its discretion when it failed to recognize his substance abuse, remorse, and traumatic brain injury as mitigating circumstances. "An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record." *Id.* at 493. However, if a trial court does not recognize a mitigating circumstance that was advanced for its consideration, it is not obligated to explain why it did not recognize the proffered mitigator. *Id.*

Sapp argues that his long history of a "substance abuse disorder" consisting of alcohol, marijuana, and opioid abuse was a mitigating circumstance improperly overlooked by the trial court. (Appellant's Br. p. 11). However, in his sentencing memorandum and argument at the sentencing hearing, Sapp only mentioned his alleged opioid abuse. In his PSI, Sapp explicitly "denied the use of heroin and prescription medications." (Appellant's App. Vol. II, p. 147). The only information before the trial court regarding Sapp's alleged opioid abuse were the unverified statements contained in his sentencing memorandum and the argument of his counsel, which were not evidence. Therefore, Sapp's substance abuse, as argued at sentencing, was not clearly supported by the record, and we cannot conclude that the trial court abused its discretion in failing to recognize it as a mitigator. *See Anglemyer*, 868 N.E.2d at 493.

As to his expressions of remorse, it has long been established that the trial court is in the best position to evaluate the importance of such evidence for sentencing. *See, e.g.*, *Gibson v. State*, 856 N.E.2d 142, 148 (Ind. Ct. App. 2006) ("Remorse, or lack thereof, by a defendant often is something that is better gauged by a trial judge who views and hears a defendant's apology and demeanor first hand and determines the defendant's credibility."). Like other credibility determinations, absent some evidence of impermissible consideration by the trial court, we do not reweigh a trial court's assessment of a defendant's expressions of remorse. *Pickens v. State*, 767 N.E.2d 530, 535 (Ind. 2002). Here, the trial court heard Sapp's allocution in which he expressed his remorse and apologized to Riggs. The trial court was not persuaded, and we will not second-guess its assessment. *Id.*

Neither can we conclude that the trial court abused its discretion when it failed to find Sapp's traumatic brain injury as a mitigating circumstance. In his PSI Sapp reported having experienced an injury and a seizure when he was in high school, but he did not characterize it as a brain injury, traumatic or otherwise. Again, the only references to a traumatic brain injury in the record were the unverified statements contained in Sapp's sentencing memorandum and the argument of his counsel, neither of which were evidence. Therefore, this factor was not clearly supported by the record, and the trial court did not abuse its discretion in declining to find it as a mitigating circumstance. *See Anglemyer*, 868 N.E.2d at 493.

In addition, the mitigating weight accorded to a defendant's mental impairment depends on, among other things, how it limits a defendant's overall functioning and the extent of any nexus between the impairment and the commission of the crime. *Smith v. State*, 929 N.E.2d 255, 259 (Ind. Ct. App. 2010), *trans. denied*. Here, Sapp who characterized his health as "fair," reported graduating from high school, fairly regular employment, and no need for medication, which indicates that, even if it had been clearly established that he had a traumatic brain injury, the injury did not significantly impact his overall functioning. (Appellant's App. Vol. II, p. 146). Sapp placed no actual evidence before the trial court that a traumatic brain injury had anything to do with the commission of the instant offense. Given the lack of evidence that his alleged traumatic brain injury impacted his functioning or had a nexus with the offenses, the trial court did not abuse its discretion in failing to find it significant for sentencing. *See id*. (finding no abuse of the trial court's sentencing discretion where Smith failed to show his diminished mental capacity limited his ability to function or had a nexus with the crime).

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion when it declined to accord mitigating weight to three of Sapp's proffered mitigators.

Affirmed.

May, J. and Altice, J. concur